IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERYL SQUIRES-CANNON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 6876 |
| | ) | |
| THE FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS, et al. | ) | Judge Virginia M. Kendall |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

On August 13, 2014, Defendant Forest Preserve District of Cook County, Illinois, ordered the arrest of Plaintiff Meryl Squires-Cannon for trespass. Squires-Cannon was subsequently charged with criminal trespass. She brings a four-count complaint against the Defendants for violation of her freedom of movement under 42 U.S.C. § 1983 (Count I) and Illinois claims for civil conspiracy (Count II), false arrest (Count III), and malicious prosecution (Count IV). Defendants Holland & Knight, LLP and Christopher Carmichael ("H&K Defendants") filed a motion to dismiss all claims against them under Federal Rule of Civil Procedure 12(b)(6). Defendants Forest Preserve District and Dennis White ("District Defendants") also filed a motion to dismiss all counts under 12(b)(6). For the reasons stated below, the Court dismisses all counts against the H&K Defendants and White. (Dkt. No. 16; Dkt. No. 19.) The Court grants the District Defendants' motion to dismiss Counts II, III, and IV against the Forest Preserve District but denies its motion to dismiss Count I against the Forest Preserve District. (Dkt. No. 19.)

## BACKGROUND

Prior to August 13, 2014, Squires-Cannon at times resided in and operated an equine breeding farm on Horizon Farms in Barrington Hills, Illinois. During 2013 and 2014, she visited the farm regularly. (Dkt. No. 1 at ¶13.) Royalty Farms, LLC has managed the equine farm on Horizon Farms since 2003 and is a lessee of Horizon Farms. *Id.* at ¶15. The Forest Preserve District acquired titled to Horizon Farms and the lease to Royalty Farms on May 5, 2014 as the result of a mortgage foreclosure. *Id.* at ¶14, 16. Holland & Knight, LLP and Carmichael represented the Forest Preserve District in the foreclosure action. *Id.* Squires-Cannon was an employee of Royalty Farms, and as part of her duties she came to Horizon Farms every morning and evening in 2013 and 2014. *Id.* at ¶18. Employees of the Forest Preserve District acknowledged Cannon's presence and communicated to her that she was allowed to be on the property to feed and care for the horses. *Id.* at ¶19.

In August 2014, the Forest Preserve District's legal department instructed its staff and the Forest Preserve District police to arrest Squires-Cannon for trespass if she entered the property. *Id.* at ¶20. On August 13, 2014, pursuant to these instructions White arrested Squires-Cannon at the usual time that she arrived to care for the horses. *Id.* at ¶21. Defendant Cooper then handcuffed Squires-Cannon, placed her in the caged back seat of his police vehicle, and transported her to another location on Horizon Farms. *Id.* at ¶23. Defendant Hildebrandt moved Squires-Cannon to his vehicle and placed a different set of handcuffs on her. *Id.* at ¶24. Squires-Cannon told Cooper and Hildebrandt that she was an employee of Royalty Farms several times. *Id.* at ¶¶23-24. Defendant Dwyer instructed Hildebrandt to take Squires-Cannon to the Maywood police station for booking, however, Hildebrandt brought her instead to the Barrington

Hills police station. *Id.* at ¶¶25, 31. On April 21, 2015, a judge in the Circuit Court of Cook County found Squires-Cannon not guilty of criminal trespass. *Id.* at ¶35.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter to state a claim to relief that is plausible on its face." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "To satisfy the notice pleading standard of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must merely provide a short and plain statement of the claim which is sufficient to give the defendant fair notice of what the...claim is and the grounds upon which it rests[.]" *Smith v. Dart*, 803, F.3d 304, 309 (7th Cir. 2015) (quotation omitted). When reviewing a complaint on a 12(b)(6) motion, the Court accepts all well-pleaded facts in the Complaint as true and then asks whether those facts state a plausible claim for relief. *Id.* at 679. But allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" are not entitled to the assumption of truth. *Id.* at 678.

## DISCUSSION

### I.     Count I States a Claim for Relief Under Section 1983

The District Defendants seek the dismissal of Count I under Rule 12(b)(6) because it does not specify "any Constitutional or federal statutory provision that Defendants are alleged to have

violated." (Dkt. No. 19 at 5.)  Squires-Cannon in turn argues that the Complaint properly alleges that the District Defendants violated her right to freedom of movement because it claims that they handcuffed her, put her in a police vehicle, and took her to the police station where she was processed.  (Dkt. No. 27 at 3.)

Count I is a cause of action under 42 U.S.C. § 1983, which allows for relief where a person acting color of law violates a right, privilege, or immunity that is "secured by the Constitution and law[.]"  The Fourth Amendment guarantees the right to be free from "unreasonable searches and seizures[.]"  U.S. CONST. amend. IV.  "A 'seizure' within the meaning of the Fourth Amendment occurs when a person's freedom of movement is restrained either by means of physical force or show of authority."  *Carter v. City of Milwaukee*, 743 F.3d 540, 543 (7th Cir. 2014).  The Complaint alleges that the Defendants arrested her and she was "deprived of her liberty and ability to move about freely."  (Dkt. No. 1 at ¶32.)  It also alleges that "[a]s the direct and proximate result of the conduct of the Defendants, Plaintiff was wrongfully deprived of her liberty[.]"  *Id.* at ¶38.  A traditional arrest, like that alleged by Squires-Cannon, in which an individual is handcuffed and taken to a police station is a clear "search" or "seizure" under the Fourth Amendment.  *See Terry v. Ohio*, 392 U.S. 1, 17 (1968); *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) ("plaintiff states a claim under § 1983 claim…where his freedom of movement was limited or restrained in some way without probable cause.").  Furthermore, these allegations provide the Defendants ample notice as required by Rule 8(a)(2) that Squires-Cannon seeks relief based on a violation of her Fourth Amendment rights because the claim that she was unlawfully arrested clearly references a deprivation of Fourth Amendment rights.  *See Smith*, 803 F.3d at 309.  Viewing the factual allegations in the light most favorable to Squires-Cannon, the Complaint states a claim for relief

for violation of Squires-Cannon's Fourth Amendment right to be free from unreasonable search and seizure under Section 1983 because it states that the Defendants arrested her and took her to the police station.[1]

## II. Existence of Probable Cause Belies Claims for False Arrest and Malicious Prosecution

The H&K Defendants argue that Counts III and IV should be dismissed under Rule 12(b)(6) because the Complaint and public court orders prove that there was probable cause to arrest Squires-Cannon. (Dkt. No. 18 at 5.) The District Defendants join H&K Defendants' argument with respect the existence of probable cause as its basis for moving to dismiss Counts III and IV. (Dkt. No. 19 at 7.) All Defendants moving to dismiss therefore posit that there was probable cause to arrest Squires-Cannon for trespass because in the foreclosure suit the state court issued orders mandating that Squires-Cannon vacate the property, confirming the Forest Preserve District's possession of title to the property, and permitting Squires-Cannon's eviction from the property if she failed to cede possession. (Dkt. No. 18 at 6.) Defendants assert that the Court can consider these state court orders at this stage because it may take judicial notice of public court documents. *Id.* at 3 n.2. In response, Squires-Cannon argues that the Complaint sufficiently alleges a lack of probable cause because the Forest Preserve District's staff was aware of her regular entry on the property, and consequently she had no notice that the Forest Preserve District "considered her presence on the property to be a crime." (Dkt. No. 26 at 3.) Squires-Cannon objects to the Court's consideration of state court orders at the motion to dismiss stage because she contends that the Court must limit its inquiry to the "four corners of

---

[1] As explained in Section II, the Defendants had probable cause to arrest Squires-Cannon for trespass. Probable cause to arrest defeats a claim for deprivation of Fourth Amendment rights. *See Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344 (7th Cir. 2010) (holding that probable cause extinguishes Fourth Amendment and malicious prosecution claims). The District Defendants, however, did not move to dismiss Count I based on failing to state a claim under the Fourth Amendment due to the existence of probable cause. The Court therefore will not consider whether to dismiss Count I under this argument.

complaint." *Id.* at 4. In the event that the Court considers the state court order, Squires-Cannon claims that the Defendants still did not have probable cause to arrest her because the May 5, 2014 order "approving the foreclosure sale of Horizon Farms to the District expressly excluded any provision that would affect the rights of tenant and other occupants, such as Royalty Farms[.]" *Id.* at 5. Squires-Cannon argues that she was included in this exception as she was a Royalty Farms employee. *Id.* She also points to language in the May 5, 2014 order that requires a "Supplemental Order of Possession or an order from the Forcible Entry of Detainer Court" for the eviction of non-parties to the foreclosure action as proof of lack of probable cause for her arrest. *Id.*

As an initial matter, the Court "may take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). In its 12(b)(6) inquiry, the Court may therefore take judicial notice of the state court orders presented by the Defendants in their motions to dismiss as they are matters of public record. *See id.*; *4901 Corp. v. Town of Cicero*, 220 F.3d 522, n.4 (7th Cir. 2000) (reviewing district court's order as a motion for dismissal under 12(b)(6) and not a motion for summary judgment because it properly took judicial notice of a state court order).

Under Illinois law, lack of probable cause is an essential element of both false arrest and malicious prosecution. *See Mannoia v. Farrow*, 476 F.3d 453, 459 (7th Cir. 2007) (the Court's "finding that the arrest warrant was supported by probable cause precludes [the plaintiff] from recovering on his claims of false arrest and malicious prosecution because under Illinois law, lack of probable cause is an essential element of both torts."); *Kincard v. Ames Dep't Stores, Inc.*, 670 N.E.2d 1103, 1109 (Ill. App. Ct. 1996) (recognizing that probable cause defeats claims

for malicious prosecution and false arrest).  Illinois law defines "probable cause" as "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 839 (Ill. App. Ct. 2006).  "A reasonable ground for belief of the guilt of an accused may be on information from other persons as well as on personal knowledge." *Turner v. City of Chicago*, 415 N.E.2d 481, 486 (Ill. App. Ct. 1980) (citations omitted).  It is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution in so proceeding." *Id.*  "Probable cause for an arrest exists when a person could reasonably believe, in light of the facts and circumstances within the knowledge of the arresting officer at the time of the arrest, that the suspect had committed or was committing an offense." *United States v. Kincaid*, 212 F.3d 1025, 1029 (7th Cir. 2000) (citation omitted).  The Court may dismiss a complaint under 12(b)(6) if even when drawing all reasonable inferences in favor of the plaintiff, the factual allegations support a finding of probable cause.  *See Williamson v. Curran*, 714 F.3d 432, 448 (7th Cir. 2013) (affirming district court's holding that the plaintiff "pleaded herself out of court" because there was probable cause defeating her false arrest claim).

On October 10, 2013, the Circuit Court of Cook County issued an order granting BMO Harris Bank and the Forest Preserve District possession of Horizon Farms.  (Dkt. No. 18, Ex. H at 2-3.)  The state court in its order required the state court defendants—which included Squires-Cannon—to vacate the property by November 18, 2013 and prohibited them from interfering with possession of the property.  *Id.* at 3-4.  On May 5, 2014, the state court approved of the foreclosure sale of Horizon Farms to the Forest Preserve District and mandated that "the Sherriff of Cook County is directed to evict and dispossess, no sooner than 30 days from the entry of this

Order, Royalty Properties, LLC, Cannon Squires Properties, LLC, Richard Kirk Cannon and Meryl Squires Cannon from the mortgaged real estate…without further Order of Court[.]" (Dkt. No. 18, Ex. E. at 6.) The state court ordered "[n]o occupants other than the individuals named in the Order of Possession may be evicted without a Supplemental Order of Possession or an order from the Forcible Entry of Detainer Court[.]" *Id.* at 7. It further held that "[n]o occupants other than the individuals named in the Order of Possession may be evicted without a Supplemental Order of Possession or an order from the Forcible Entry of Detainer Court[.]" *Id.* The Complaint admits that pursuant to the May 5, 2014 order, "the Forest Preserve District acquired title to the Horizon Farms property" and Squires-Cannon "was a party to that litigation, adverse to the Forest Park District[.]" (Dkt. No. 1. at ¶14.) It also alleges that "Employees and staff of the Forest Preserve District repeatedly acknowledged Plaintiff's presence at Horizon Farms and communicated to her that she was permitted to enter the property to feed and care for the horses. From time to time the Forest Preserve District personnel at the farm, including Forest Preserve District police officers, checked with their superiors and others to confirm that Plaintiff was permitted to enter the property." *Id.* at ¶19.

Viewing these facts in the light most favorable to Squires-Cannon and drawing all inferences in her favor, there was probable cause to arrest Squires-Cannon on August 13, 2014 for trespass. Under Illinois law, "[a] person commits criminal trespass to real property when he or she: (1) knowingly and without lawful authority enters or remains within or on a building; [or] (2) enters upon the land of another, after receiving, prior to the entry, notice from the owner or occupant that the entry is forbidden[.]" 720 ILCS 5/21-3(a)(1-2). "A person has received notice from the owner or occupant…if he or she has been notified personally, either orally or in writing including a valid court order[.]" 720 ILCS 5/21(b). According to the Complaint, "the Forest

Preserve District's legal department gave instructions to the Forest Preserve District maintenance staff employees and to the Forest Preserve District police department, that if Plaintiff was observed on the property she should be arrested for trespass." (Dkt. No. 1 at ¶20.) Although the Complaint does not specify the reason why this instruction was given, the only reasonable inference is that the Forest Preserve District sought to have Squires-Cannon arrested for trespass in order to enforce the October 13, 2013 and May 5, 2014 orders banning her from the property because she had been entering the property every day in contravention of those orders.    In light of the October 13, 2013 and May 5, 2014 orders, it was reasonable to believe that Squires-Cannon committed trespass on August 13, 2014.  First, under the October 13, 2013 order, Squires-Cannon was not permitted on Horizon Farms as of November 18, 2013.  (Dkt. No. 18, Ex. H at 3-4.)  As such, that order alone provided the Defendants probable cause to arrest her for trespass on August 13, 2014.  But in addition, the May 5, 2014 order reiterated that Squires-Cannon cannot lawfully enter Horizon Farms as it specifies Squires-Cannon by name as an individual who the Sheriff thereafter had permission to "evict and dispossess…without further Order of Court[.]" (Dkt. No. 18, Ex. E. at 6.)  Consequently, a reasonable person would interpret the October 13, 2013 and May 5, 2014 court orders in conjunction with Squires-Cannon's presence on the property on August 13, 2014 as more than sufficient to create probable cause that she had committed trespass.

Squires-Cannon claims that she had no notice that the Forest Preserve district considered her presence on the property trespass because she entered the property every day prior to August 13, 2014.  (Dkt. No. 26 at 3; Dkt. No. 27 at 6.)  Squires-Cannon received notice under Illinois law from both the October 13, 2013 and May 5, 2014 court orders that her entry on the property after November 18. 2013 would constitute trespass and the Sheriff could correspondingly evict

her.  *See* 720 ILCS 5/21(b).  And it was reasonable for the Defendants to infer that Squires-Cannon had received notice of these orders, regardless of the fact that she continued to defy them by regularly entering the property.  *See Kincaid*, 212 F.3d at 1029 (holding that the proper inquiry is "whether a reasonable person" in the arrestor's position "would infer notice onto" the arrestee). The Complaint does allege that the Forest Preserve District "communicated" to Squires-Cannon that she could enter the property and "confirmed" this with "their superiors[.]" (Dkt. No. 1 at ¶19.)  But even accepting these allegations as true, it does not change the reality that there were two state court orders prohibiting her entry and mandating her eviction which by law gave her notice that entry is unlawful.

Squires-Cannon's arguments that the May 5, 2014 order exempted her from eviction are also unfounded.  (Dkt. No. 26 at 5; Dkt. No. 27 at 8.)  As Squires-Cannon points out, the state court removed from this order language mandating the eviction of "any Unknown Owners, and Non-Record Claimants"; however, Squires-Cannon does not fall into this category because the same sentence of the order names her as an individual who the Sherriff is directed to evict.  (Dkt. No. 18, Ex. E. at 6.)  Squires-Cannon similarly misinterprets the next paragraph in the May 5, 2014 order, which states that the Sherriff must obtain a "Supplemental Order of Possession or an order from the Forcible Entry of Detainer Court" in order to evict individuals not named in the order.  *Id.*  Squires-Cannon was named as a defendant in the May 5, 2014 order and that order specifically identifies Squires-Cannon as an individual who the Sherriff could evict.  *Id.*  Lastly, Squires-Cannon argues that the state court orders did not mandate her eviction because she was entitled to be on the property as an employee of Royalty Properties, LLC, which had a right to be on the property under a lease.  (Dkt. No. 26 at 6; Dkt. No. 27 at 8.)  But this argument fails in the face of both orders requiring Squires-Cannon as an individual to vacate the property or face

eviction.  In short, there was probable cause to arrest Squires-Cannon for trespass because two state court orders prohibited her presence on the property and ordered her eviction.  Because a lack of probable cause is required to state a claim for false arrest and malicious prosecution, the Court grants the H&K Defendants and District Defendants' motions to dismiss Counts III and IV with prejudice.

### III.    Count II: Civil Conspiracy

Count II alleges that the Defendants committed civil conspiracy because "Defendants Carmichael and Holland & Knight, LLP, at a time or times not known to Plaintiff but on or before August 13, 2014, communicated and conspired with one or more of the other Defendants, including Dennis White, one or more of Does Nos. 1-15, and the Forest Preserve District, making a plan and agreement that the Forest Preserve District, through its own police force, would apprehend Plaintiff on the Horizon Farms property, arrest her and charge her with a crime, and then prosecute her for the same."  (Dkt. No. 1 at ¶42.)  It further lists overt acts that were allegedly committed in furtherance of the conspiracy, specifically: "Holland & Knight, LLP and Carmichael provided advice and counsel to the Forest Preserve District that Plaintiff could be treated as a trespasser and arrested,"; "Dennis White gave directions to Defendants Dwyer and Hildebrandt to arrest Plaintiff, take her into custody and transport her,"; and "The Forest Preserve District, through its own private police force, and without probable cause, arrested the Plaintiff, took her into custody, caused her to be charged with a criminal offense, and then maliciously prosecuted her."  *Id.* at ¶43.

## A.     Failure to State a Claim for an Underlying State Law Tort

The H&K Defendants and District Defendants[2] claim that the Complaint fails to state a claim for civil conspiracy in Count II because there was probable cause to arrest Squires-Cannon, thereby negating the possibility that they committed an unlawful act.  (Dkt. No. 18 at 11.)  "To succeed in a claim of civil conspiracy under Illinois law, the plaintiffs must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007).  To succeed on a civil conspiracy claim in Illinois, evidence of agreement alone is not enough because under the second element, "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994).  The reason is that the civil conspiracy law criminalizes "not the agreement itself, but the tortious acts performed in furtherance of the agreement." *Id.*  Accordingly, to survive a motion to dismiss, the Complaint must plausibly allege at least one of the underlying state law torts in the civil conspiracy claim and if it fails to do so, the civil conspiracy claim must be dismissed.

As described above, the Complaint fails to properly allege false arrest and malicious prosecution because there was probable cause to arrest Squires-Cannon based on the state court orders.  And because the Complaint does not state a claim for an underlying state law tort, the civil conspiracy claim fails.  The Court thus grants the District Defendants and H&K

---

[2] The District Defendants "join Section A" of the H&K Defendants' motion to dismiss.  (Dkt. No. 19 at 7.)  Section A of the H&K Defendants' motion to dismiss seeks dismissal of all claims against them, including the civil conspiracy claims.  Hence, the District Defendants' adopted the H&K Defendants' arguments with respect to probable cause barring the civil conspiracy claim.

Defendants' motions to dismiss Count II without prejudice because the Complaint fails to allege a tort, as required by Illinois law.  *See, e.g., Johnson v. Dossey*, 878 F.Supp.2d 905, 918 (N.D. Ill. 2012) (granting summary judgment in favor of the defendant on civil conspiracy claim because there was probable cause for the plaintiff's arrest and prosecution); *U.S. Data Corp. v. RealSource, Inc.*, 910 F.Supp.2d 1096, 1110 (N.D. Ill. 2012) ("if the plaintiff fails to establish the underlying tortious act, then the conspiracy claim also fails.").

### B.      Count II Fails under the Intracorporate Conspiracy Doctrine

In the alternative, the District Defendants and H&K Defendants seek the dismissal of Count II on the basis that they could not have conspired with the other Defendants under the intracorporate conspiracy doctrine because they were all employees of the Forest Preserve District.  (Dkt. No. 18 at 12; Dkt. No. 19 at 5-6.)  Squires-Cannon responds that the intracorporate conspiracy doctrine does not apply because the conspiracy was between the District Defendants and the Forest Preserve District's outside counsel.  (Dkt. No. 26 at 8; Dkt. No. 27 at 4.)

Under the intracorporate conspiracy doctrine, "a civil conspiracy cannot exist between a corporation's own officers or employees." *Van Winkle v. Owens-Corning Fiberglas Corp.*, 683 N.E.2d 985, 991 (Ill. App. Ct. 1997).  There are two exceptions to this rule: (1) "where corporate employees are shown to have been motivated solely by personal bias," and (2) where "the conspiracy was part of some broader discriminatory pattern…or…permeated the ranks of the organization's employees." *Hartman v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 4 F.3d 465, 470-71 (7th Cir. 1993); *see, e.g., Stone v. Bd. of Trs. of Northern Ill. Univ.*, 38 F.Supp.3d 935, 949-50 (N.D. Ill. 2014).  The intracorporate conspiracy doctrine extends to consultation between outside legal counsel and an entity such that these communications are not a conspiracy.  *See Travis v.*

*Gary Cmty. Mental Health Ctr. Inc.*, 921 F.2d 108, 111 (7th Cir. 1990) (holding that there was no conspiracy where an entity consulted with outside counsel about terminating the plaintiff because otherwise it "would discourage corporations from obtaining legal advice before acting, hardly a sound step to take."). According to the Complaint, White was a lawyer in the Forest Preserve District's "legal department," and the H&K Defendants were also legal counsel to the Forest Preserve District. (Dkt. No. 1 at ¶¶8-9; 20-21.) Even reading these allegations in the light most favorable to Squires-Cannon, the Complaint falls short of stating a claim for civil conspiracy against the District Defendants because they are employees of the same organization who cannot conspire under the intracorporate conspiracy doctrine. The Complaint fails under 12(b)(6) against the H&K Defendants as well because the communications that is allegedly a conspiracy was legal advice the H&K Defendants provided its client as outside counsel, which cannot constitute a conspiracy. *See Travis*, 921 F.2d at 111. Lastly, neither of the exceptions to the intracorporate conspiracy doctrine plausibly apply: first, the Complaint has no allegation of the Defendants' personal bias against Squires-Cannon but only claims that they conspired "for the specific purpose of intimidating and harassing her and causing her harm" (Dkt. No. 1 at ¶46); and second, the Complaint is void of any allegation that there was a "broader discriminatory pattern" or that the conspiracy "permeated the ranks" of the Defendants. *Hartman*, 4 F.3d at 470-71. As a result, the Court dismisses Count II against the District Defendants and H&K Defendants with prejudice because it fails under the intracorporate conspiracy doctrine.

## IV.  White is Entitled to Qualified Immunity

Defendant White argues in the alternative that all claims should be dismissed against him because he is entitled to qualified immunity as a government officer. (Dkt. No. 19 at 11.) He proposes that even though he is not a police officer, he should receive qualified immunity

because he is a government official who was acting in his official capacity when he allegedly arrested Squires-Cannon. *Id.* at 12. White claims that qualified immunity applies because Squires-Cannon "did not properly allege a violation of a federal constitutional or statutory right[.]" *Id.* Squires-Cannon counters that qualified immunity does not apply because the Complaint's allegation that White violated her right of free movement when she was falsely arrested properly states a claim for deprivation of a well-established constitutional right. (Dkt. No. 27 at 9-10.)

When a defendant claims the affirmative defense of qualified immunity, the Court "appl[ies] a two-step approach. As a threshold issue, we determine if [the defendant] has asserted a violation of a constitutional right. We next consider whether the right was clearly established at the time the alleged violation occurred." *Delaney v. DeTella*, 256 F.3d 679, 682 (7th Cir. 2001) (citations omitted). In the first step, the Court considers whether the plaintiff has stated a claim for a constitutional deprivation. *See id.* at 683; *Levenstein v. Salafsky*, 164 F.3d 345, 351 (7th Cir. 1998) ("once the public official raises the defense of qualified immunity, the plaintiff bears the burden of showing (1) whether he or she has asserted a violation of a constitutional right[.]"). The second step requires the plaintiff to prove that "the applicable constitutional standards were clearly established at the time in question." *Levenstein*, 164 F.3d at 351. "The key point for the second question is whether a reasonable person would have been on notice that her actions violated clearly established law. A plaintiff can establish this either by showing that a closely analogous case has already established both the right at issue and its application to the factual situation at hand…or by showing that the violation was so obvious that a reasonable person would necessarily have known about it." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir. 1996) (citation omitted). The plaintiff must satisfy her burden for both steps in order

for the Court to find that the defendant is not entitled to qualified immunity. *See Levenstein*, 164 F.3d at 351.

The Complaint states that on August 13, 2014, White was an attorney for the Forest Preserve District who instructed the Forest Preserve District police department to arrest Squires-Cannon for trespass. (Dkt. No. 1 at ¶¶20-21; 44.) As an attorney representing a government entity, White is considered a public official for immunity purposes. *See Filarsky v. Delia*, 132 S.Ct. 1657, 1666 (2012) (holding that a private attorney retained by a city is entitled to assert qualified immunity). Turning to the two-step qualified immunity analysis, Squires-Cannon satisfied her burden in the first step because, as outlined in Section I, the Complaint alleges sufficient facts to state a claim for the violation of a constitutional right. With respect to the second step, the question is whether a reasonable person in White's position would have been on notice that arresting Squires-Cannon for trespass violated clearly established law. *See Erwin*, 92 F.3d at 525. Squires-Cannon fails to make this showing as she presented neither a "closely analogous case [that] has already established both the right at issue and its application to the factual situation" nor an argument that "the violation was so obvious that a reasonable person would necessarily have known about it." *Id.* Squires-Cannon does not cite to any case as factually analogous in her response. (Dkt. No. 27 at 9-11.) She posits that "[i]t has been settled for some time that the arrest and prosecution of an individual without probable cause or reasonable grounds is a violation of that individual's rights." *Id.* at 10. But, as explained in Section II, there was ample evidence from the state court orders banning Squires-Cannon from the property and ordering her eviction to create probable cause to arrest Squires-Cannon for trespass, and the existence of probable cause negates claims for a violation of Fourth Amendment rights, false arrest, and malicious prosecution. *See Sparing v. Village of Olympia*

*Fields*, 266 F.3d 684, 688 (7th Cir. 2001) (finding that under the Fourth Amendment "police officers may constitutionally arrest an individual in a public place (*e.g.*, outside) without a warrant, if they have probable cause."); *Mannoia*, 476 F.3d at 459. Accordingly, Squires-Cannon fails to satisfy her burden in the second step of the qualified immunity inquiry as a reasonable person in White's position would not have notice that arresting Squires-Cannon was a violation of her rights under clearly established law because he reasonably determined that there was probable cause to arrest her. Because Squires-Cannon did not meet her burden in both steps of the two-step qualified immunity inquiry, White is entitled to qualified immunity and the Court dismisses Counts I, II, III, and IV against him with prejudice.

## V.     It is Plausible that H&K Defendants are Liable for False Arrest and Malicious Prosecution as Private Individuals

The H&K Defendants argue that even if Counts III and IV are not dismissed for probable cause, they cannot be liable for false arrest and malicious prosecution as private individuals. (Dkt. No. 18 at 9.) They assert that they cannot be liable under Illinois law for an arrest and prosecution because the Complaint alleges that the H&K Defendants merely "provided a legal interpretation of a state court order for its client." *Id.* at 10. Squires-Cannon, on the other hand, claims that the Complaint states claims for false arrest and malicious prosecution against the H&K Defendants because it can be inferred from the allegations that their "involvement was an active collaboration to cause an arrest and prosecution." (Dkt. No. 26 at 7.) She retorts that "[t]he H&K Defendants specifically requested and directed the District Defendants to arrest and prosecute" her and their "participation was so active and positive in character as to amount to advice and cooperation to commence the criminal proceeding." *Id.* at 7-8.

"Illinois law requires that, in order to commence or continue a criminal proceeding, the defendant must have initiated the criminal proceeding or his participation in it must have been of

17

so active and positive a character as to amount to advice and cooperation. Thus, a private citizen does not commence a criminal action merely by reporting information to the police—even if the information later turns out to be incorrect." *Logan v. Caterpillar*, 246 F.3d 912, 922 (7th Cir. 2001). In order to for a private individual to be liable for malicious prosecution in Illinois, the plaintiff must demonstrate that the defendant either "(1) instituted the proceedings against the plaintiff; (2) knowingly made false statements to the police; or (3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest." *Id.*; *see, e.g., Doe v. City of Chicago*, 39 F.Supp.2d 1106, 1113 (N.D. Ill. 1999). Furthermore, Illinois law holds a "private individual…liable for false arrest if the defendant goes beyond merely giving information and participates in making an arrest which turns out to be unlawful." *See Olinger v. Doe*, 163 F.Supp.2d 988, 990 (N.D. Ill. 2001). "It is well settled in Illinois that giving information to police in itself is insufficient to constitute participation in an arrest." *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 326, (7th Cir. 1978) (quotation omitted). A private individual can be liable for false arrest if she directs or procures the arrest. *See id.* (acknowledging that defendants not liable if "they had not directed procured" the false arrest).

The Complaint alleges that "[a]t some point in August 2014, unbeknownst to the Plaintiff, the Forest Preserve District's legal department gave instructions to the Forest Preserve District maintenance staff employees and to the Forest Preserve District police department, that if Plaintiff was observed on the property she should be arrested for trespass." (Dkt. No. 1 at ¶20.) It then states that Cooper arrested Squires-Cannon on August 13, 2014 pursuant to the H&K Defendants' instructions. *Id.* at ¶¶21-23. Regarding the malicious prosecution claim, a private individual initiates a criminal judicial proceeding by filing a complaint, *see Logan*, 246 F.3d at 922, but the Complaint does not allege that the H&K Defendants filed a complaint

against Squires-Cannon. Moreover, even viewing its allegations in the light most favorable to Squires-Cannon, the Complaint does not plausibly demonstrate that the H&K Defendants either "knowingly made false statement to the police[.]" *Id.* But it is plausible that they "requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest" because the Complaint alleges that they instructed the police to arrest Squires-Cannon. *Id.* Similarly, the Complaint properly alleges that the H&K Defendants can be liable for false arrest because it states that they directed the police to arrest Squires-Cannon. *See Butler*, 589 F.2d at 326; *see e.g., Olinger*, 163 F.Supp.2d at 990 ("a defendant must go beyond providing the information leading to the arrest and actually request and obtain the arrest" to be held liable as a private citizen). The Court therefore denies the H&K Defendants' motion to dismiss Counts III and IV for the reason that the Complaint does not state a claim for holding them liable as private individuals for malicious prosecution and false arrest. Nevertheless, as explained in Section II, the Court dismisses Counts III and IV against the H&K Defendants because there was probable cause to arrest Cannon.

## VI.    Absolute Litigation Privilege Bars Claims against H&K Defendants

The H&K Defendants' final argument for dismissal opines that all claims fail under 12(b)(6) because they are barred by their "privilege to provide litigation advice to its clients." (Dkt. No. 18 at 12.) They further claim that the Complaint should be dismissed because Squires-Cannon cannot ask the Court to review previous litigation by another court as the state court already denied Squires-Cannon's motion for sanctions for the August 13, 2014 arrest. *Id.* at 14. Squires-Cannon disputes whether the absolute litigation privilege applies to the causes of action in the Complaint. (Dkt. No. 26 at 10.) She also argues that the Court can provide her redress because the H&K Defendants' misconduct has not been adjudicated in the state court. *Id.* at 11.

"Illinois law recognizes an absolute litigation privilege which protects anything said or written in the course of a legal proceeding. The only qualification to this privilege is that the communication pertain to the litigation. This requirement is not applied strictly, and the communication need not be confined to the specific issues involved in the litigation....The rationale for the privilege is to secure for attorneys as officers of the court the utmost freedom in representing clients. The absolute privilege is afforded even when malice is assumed to have motivated the attorney. All doubts are to be resolved in favor of finding that the privilege applies." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998) (citation omitted). The Complaint brings claims against the H&K Defendants for giving the order to arrest Squires-Cannon. Drawing all reasonable inferences in Squires-Cannon's favor, the plausible reason was that the H&K Defendants believed as the Forest Preserve District's attorneys that Squires-Cannon's arrest would protect the its property rights under the state court orders. In her response, Squires-Cannon suggests that they gave the order to "intimidate and harass her in retaliation for her defense of the foreclosure litigation." (Dkt. No. 26 at 10.) But even if this was their motivation, the H&K Defendants' actions are protected under the absolute litigation privilege because "even when malice is assumed to have motivated the attorney," the attorney's action is protected. *Steffes*, 144 F.3d at 1074.

In addition, the absolute litigation privilege is not limited to protection against claims for "defamation, invasion of privacy, breach of contract, or negligent infliction of emotional distress," as argued by Squires-Cannon. (Dkt. No. 26 at 11.) Under Illinois law, the absolute litigation privilege applies traditionally applies to not only to attorneys' communication "made before, during, and after litigation," but also whenever "Illinois policy would be furthered by doing so." *O'Callaghan v. Satherlie*, 36 N.E.3d 999, 1008-09 (Ill. App. Ct. 2015) (finding that

absolute litigation privilege applies to claims for intentional infliction of emotion distress and strict liability).  This principle comports with the rule in Illinois that "[t]here is no civil cause of action for misconduct which occurred in prior litigation.  Instead, parties should attempt to redress injuries from misconduct in judicial proceedings in the same litigation.  Were it otherwise, litigation would never end.  Moreover, it is improper for a trial court to review prior litigation that occurred before a different judge."  *Id.* at 1009 (citations and quotations omitted); *see also Johnson v. Johnson & Bell, Ltd*, 7 N.E.3d 52, 57 (Ill. App. Ct. 2014) ("Petitions to redress injuries resulting from misconduct in judicial proceedings should be brought in the same litigation.") (citation omitted).  The H&K Defendants' instruction to its client to arrest Squires-Cannon was made after the foreclosure litigation in order to enforce its resolution.  It was given in furtherance of state court orders that had already decided the issue of whether Squires-Cannon could lawfully enter the property.  If this Court were to question the state court orders banning Squires-Cannon from the property and mandating her eviction, it would violate Illinois law prohibiting another court from reviewing an order.  *See id.*  Moreover, as noted by the H&K Defendants, the state court denied Squires-Cannon's motion for sanctions as a result of her arrest and prosecution for criminal trespass.  (Dkt. No. 18 at Ex. J.)  Thus, the state court has ruled a total of three times that Squires-Cannon cannot enter the property and the Forest Preserve District has the right to evict her.  The Court cannot review these decisions by the state court. *See O'Callaghan,* 36 N.E.3d at 1009; *Johnson*, 7 N.E.3d at 57.  In conclusion, the Court grants the H&K Defendants' motion to dismiss all claims against them with prejudice because they are protected under the absolute litigation privilege.

## VII.    Abstention is Not Warranted

Finally, the District Defendants ask the Court in the alternative to stay this case under the *Colorado River* doctrine because of identical state court lawsuits.  (Dkt. No. 19 at 13.)  Squires-Cannon opposes abstention because she believes that the state court litigation is not parallel to this action.  (Dkt. No. 27 at 12.)   The *Colorado River* doctrine allows federal courts in exceptional cases to defer to a concurrent state court case because of the need to give regard to conservation of judicial resources and comprehensive disposition of litigation.  *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  In determining whether to abstain under to the *Colorado River* doctrine, the Court conducts a two-part inquiry.  *See Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 751 (7th Cir. 2066).  First, it must decide whether the concurrent state and federal actions are parallel.  *Id.*  The two suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issues."  *Id.* at 752.  But "[p]recisely formal symmetry is unnecessary" for finding they are parallel; rather, "the question is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case."  *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 499 (7th Cir. 2011) (quoting *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)).  Second, only if the Court finds that the suits are parallel, it must then weigh a number of non-exclusive factors that can demonstrate the existence of exceptional circumstances.  *Tyrer*, 456 F.3d at 751.

The only claim to survive the Defendants' motions to dismiss is the Section 1983 claim against the Forest Preserve District as the Court dismissed the remaining counts.  *See supra* Sections I-IV.  The state court litigation that the District Defendants claims is parallel pertains to the foreclosure and does not contain Cannon's Section 1983 claim.  (Dkt. No. 18, Ex. B.)  The

state court litigation therefore will not dispose of all the claims remaining in this federal case and the cases are not parallel; hence, abstention is inappropriate.  *See Adkins*, 644 F.3d at 499.

## <u>CONCLUSION</u>

For the reasons stated therein, the Court grants the H&K Defendants' motion to dismiss all claims against them.  (Dkt. No. 16.)  The Court also grants the District Defendants' motion to dismiss all claims against White and Counts II, III, and IV against the Forest Preserve District. (Dkt. No. 18.)  The Court denies the District Defendants' motion to dismiss Count I against the Forest Preserve District.  (Dkt. No. 19.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date:  2/12/2016