**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MERYL SQUIRES CANNON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 CV 6876 |
| | ) | The Honorable Virginia M. Kendall |
| **DENNIS WHITE**, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**OFFICER HILDEBRANDT'S REPLY TO PLAINTIFF'S RESPONSE TO HIS MOTION
TO DISMISS**

NOW COMES Eric Hildebrandt, Police Officer for the Forest Preserve District of Cook
County ("District"), in his official capacity ("Officer Hildebrandt"), by his attorney Anita
Alvarez, State's Attorney of Cook County, through her Assistant State's Attorney Jayman A.
Avery III, and for his Reply to Plaintiff's Response ("Response" (Dkt. 82)) to his Motion to
Dismiss ("Motion" (Dkt. 79)) states:

**I.      INTRODUCTION.**

Plaintiff omits the most important facts in this case from her recital of the facts in her
Response by failing to make any mention of the two state court orders ("the Orders") that form
the basis for probable cause. Plaintiff's omission at this late date is significant, because this
Court has already properly taken judicial notice of them (Memorandum Opinion and Order
("First Opinion" (Dkt. 52)), at 6; Memorandum Opinion and Order ("Second Opinion" (Dkt.
76)), at 2, n. 1), relying on at least two cases for that proposition. *See Henson v. CSC Credit
Services*, 29 F.3d 280, 284 (7th Cir. 1994); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527, n.
4 (7th Cir. 2000). The Orders, in addition to establishing reasonable, rational, and plausible

1

evidence of probable cause, also establish that Plaintiff was not supposed to be on the property. Thus, she was trespassing, regardless of whether she was found guilty of it or not.[1]

The Orders, placed before the Court in earlier briefs, notably motions to dismiss filed by defendants Holland & Knight and Christopher Carmichael ("Carmichael") (Dkt. 18), and by the District and Dennis White ("White") (Dkt. 19), plainly show that Plaintiff, by name, was specifically ordered off the property. The first Order, entered on October 13, 2013, expressly provided that the state court defendants, which included Plaintiff, were required to **vacate** the property by November 18, 2013 and it prohibited them from interfering with the District's possession of the property. *See* First Opinion, at 7; Dkt. 18, Exhibit H, at 2-3; Dkt. 19, Exhibit 1 (Appendix), Exhibit H, at 2-3 (emphasis supplied). "Vacate" means to surrender occupancy or possession; to move out or leave. *See* Black's Law Dictionary, Deluxe Seventh Edition (West 1999), at 1546. *See also* Funk and Wagnall's Standard Desk Dictionary (1974), at 752 ("vacate"-"to go away, to leave"). Contrary to Plaintiff's contention, she was supposed to **leave** the property, not continue to be on it. Moreover, by being on the property, Plaintiff was undoubtedly interfering with the District's possession of the property.[2]

The second Order, entered on May 5, 2014, stated that "the Sheriff of Cook County is directed to **evict** and dispossess, no sooner than 30 days from the entry of this Order [*i.e.* June 4, 2014] . . . Meryl Squires Cannon." *See* First Opinion, at 7-8, *citing* Dkt. 18-5 Ex. E, at 6 (emphasis supplied). This Court recognized that the order was self-executing when it stated that no occupants other than the individuals named in the Order of Possession could be evicted

---

[1] Trespass has been defined as "wrongful entry on another's real property." *See* Black's Law Dictionary, Deluxe Seventh Edition (West 1999), at 1508.

[2] Once she received notice on August 12, 2014 that she was not to be on the property, a fact which Plaintiff concedes by virtue of her Withdrawal of Contention (*See* Dkt. 78), it was Plaintiff that controlled her conduct as to whether she would stay off the property or continue to interfere with the District's possession of it; *i.e.*, trespass. She intentionally chose the latter.

without a Supplemental Order of Possession or an Order from the Forcible Entry and Detainer Court. *Id.* Stated another way, individuals named in the Order -- such as Plaintiff -- were evicted by the May 5, 2014 Order without need for further action. *See*, *e.g.*, First Opinion at 10-11. Further, "evict" means to expel from real property, usually by means of legal process. *See* Black's Law Dictionary, Deluxe Seventh Edition (West 1999), at 575. The Orders and the actions taken pursuant thereto on August 13, 2014, were the legal process by which Plaintiff was to be removed from the property.

Plaintiff's contention that her presence at the farm was not in contravention of the Orders is utterly devoid of merit. Response, at 4. Plaintiff ignores the "eviction" and "vacate" portions of the Orders when she claims that they only deprived her of her possessory interest in the property. *Id.* As this Court correctly ascertained, the Orders evicted her and required her to vacate (*i.e.*, leave) the property. *See* First Opinion, at 9-11.

Plaintiff contends that Officer Hildebrandt did not know whether Plaintiff had received any "no trespassing" notice from anyone (Response, at 4, n. 1) and that Officer Hildebrandt could not have reasonably determined that he had probable cause to arrest her. Response, at 6. However, in her Complaint, Plaintiff states that Forest Preserve Police officers checked with their superiors from time-to-time to confirm whether Plaintiff was permitted to enter the property. Compl., at ¶19. It is reasonable to infer that there would be no reason other than the Orders for anyone from the District to have to check with their superiors about whether Plaintiff was allowed on the property. This Court plausibly made such an inference in concluding that there was probable cause. *See* First Opinion, at 8-10; Second Opinion, at 6-7. Moreover, the record plainly reveals that when Officer Hildebrandt checked with his superiors for the last time prior to her arrest, he was told Plaintiff was no longer allowed on the property. Compl., at ¶20.

But for the existence of the Orders, there would be no reason for any of the actions described in Plaintiff's Complaint to have occurred.

Plaintiff makes another patently false statement that it is "uncontroverted that there was no such notice posted on the property." Response, at 4, n. 1. However, **Plaintiff** attached the transcript of the criminal trial to her Motion to Reconsider (Dkt. 60, Exhibit 1),[3] and it clearly shows that notice was posted on the property. One of the People's witnesses stated that he had posted 15 "legal notices of eviction" on the property. *Id.*, at 10, ¶¶1-22. On cross-examination, the same witness stated that he posted the notices on buildings, fence posts, and obvious places that they would be visible when a person entered the property. *Id.*, at 16, ¶¶16-20. Plaintiff's pattern of making knowingly false statements continues and her contention should be rejected.

## II.    ARGUMENT.

In each of the sections and subsections of the Motion, Officer Hildebrandt relied on case law AND on this Court's prior decisions on those propositions of law to support his contentions. In her Response, Plaintiff predominantly contests this Court's prior decisions (by arguing that probable cause should not have been determined as a matter of law) and NOT Officer Hildebrandt's legal basis for dismissal. Accordingly, in this Reply, Officer Hildebrandt will attempt to avoid repeating arguments not addressed by Plaintiff.

---

[3] The transcript is probably not properly before this Court because it could have been attached to Plaintiff's Complaint. *See Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (a party cannot use a motion to reconsider to introduce new evidence it could have presented earlier). Nonetheless, if this Court chooses to consider it, the transcript directly contradicts Plaintiff's contention.

**A.  THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE PROBABLE CAUSE BECAUSE OF THE ADDITIONAL MATTERS PROPERLY BEFORE THIS COURT.**

As to probable cause, Plaintiff relies on only three cases, and she improperly cites the propositions for which the first and third cases stand.  Plaintiff cites *Bates v. Stevenson*, 1995 U.S. Dist. Lexis 1795 (N.D. Ill. 1995) for the proposition that the determination of probable cause is an issue of fact suited for the jury, and **is not appropriate for resolution on a motion to dismiss.**  *See* Response, at 4 (emphasis supplied).  What *Bates* actually states is that while claims that challenge the existence of probable cause **generally** present questions of fact for a jury to decide, **probable cause may be found as a matter of law "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them**."  *Id.*, at 12 (emphasis supplied) (citing *Sheik-Abdi v. McLellan*, 37 F.3d 1240, 1246 (7th Cir. 1994)).

*Gay v. Robinson*, 2009 U.S. Dist. Lexis 5904 (C.D. Ill. 2009), similarly, does not stand for the proposition advanced by Plaintiff.  *See* Response, at 6 ("the existence of probable cause is a fact-based inquiry **not properly resolved on a motion to dismiss**.") (emphasis supplied).  What *Gay* actually states is that the existence of probable cause is a fact-based inquiry that is **more properly resolved on summary judgment**.  *Id.*, 2009 U.S. Dist. Lexis 5904, at 9 (emphasis supplied).  In both instances, there are subtle but important differences between the actual statements in the cases and Plaintiff's purported recitations of them.  Therefore, her statements are false, or, at a minimum, misleading.[4]

---

[4] Having already determined that there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them as to whether probable cause existed (*see e.g.*, First Opinion at 2-3, 8-11), there is no reason for this Court not to affirm its decision that probable cause exists in this case.

Plaintiff also relies on *Olson v. Champaign County, Illinois*, 784 F.3d 1093 (7th Cir. 2015), a case involving allegations that officers made false statements, for the proposition that this Court's conclusion that the only reasonable inference is that the arrest was to enforce the Orders, inappropriately resolved contested fact questions that should not have been resolved until a full factual record was developed. Response, at 5. First, *Olson* is not applicable because, unlike in that case, there is no allegation in the Complaint that any officer made false statements. In addition, Plaintiff's contention ignores both *Henson* and *4901 Corp.* (holding that considering state court documents is proper at the *12(b)(6)* stage of a case), and also the direct holding of *Williamson v. Curran*, 714 F.3d 432 (7th Cir. 2013), relied upon by this Court (*see* First Opinion, at 7). In *Williamson*, the court considered numerous documents that the plaintiff had attached or referred to in her complaint in making the probable cause determination. *Id.,* at 436. Importantly, the court also stated that the plaintiff had not "disavowed" any of the extraneous documents in the briefing. *Id.*, at 436-37. Here, Plaintiff affirmatively refers to the circuit court foreclosure case, thus conceding that documents associated with that case are applicable to this case. *See* Compl., at ¶14; Response, at 5. Thus, the factual record properly before this Court allows the probable cause inquiry at this stage. Plaintiff has never contended that the documents relied on by the other Defendants or this Court are not genuine or otherwise disavowed any of them. She has therefore "pleaded herself out of court" because probable cause exists. *See Williamson*, 714 F.3d at 448.

## B. QUASI-JUDICIAL IMMUNITY DOES APPLY.

Plaintiff's challenge to Officer Hildebrandt's statement about paragraph 14 of the Complaint ignores established facts. *See* Response, at 7. Paragraph 14 of the Complaint affirmatively states that the District acquired title to Horizon Farms on May 5, 2014. *See*

Compl., at ¶14.  However, Plaintiff must be ignoring the fact that the May 5, 2014 Order also provided for Plaintiff's eviction and dispossession from the property.  *See* First Opinion, at 7-8, *citing* Dkt. 18-5 Ex. E, at 6.  Thus, Officer Hildebrandt's statement merely reflected that Plaintiff's own allegations put the May 5, 2014 Order before this Court, and, under *Williamson*, because Plaintiff obviously did not disavow it, this Court could use it when it determined whether Officer Hildebrandt was acting pursuant to a valid court order.

Plaintiff's remaining contentions regarding the availability of quasi-judicial immunity to Officer Hildebrandt ignore the case law he relied on in his Motion (*see* Motion, at 6-7), and this Court's findings as to officers Cooper and Dwyer.  *See* Second Opinion, at 4-6.  Importantly, as this Court found, Plaintiff's Complaint constitutes an assault on the eviction Orders and absolute quasi-judicial immunity applies.  *See Id.*, at 5.  In addition, Plaintiff points to no authority for her proposition that quasi-judicial immunity does not apply to an officer because his or her police force was not named in the order.  *See* Response, at 8.  For these reasons, Plaintiff's claims fail.

## C.  QUALIFIED IMMUNITY DOES APPLY.

Plaintiff contends that her freedom of movement was impaired, thus violating her civil rights.[5]  Response, at 8.  However, one of the cases relied upon by Plaintiff, *Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1997), allows this Court to now engage in the qualified immunity inquiry that it already engaged in with respect to Officers Cooper and Dwyer (*see* Second Opinion, at 7-8) at the *Rule 12(b)(6)* stage.  *See Levenstein*, 164 F. 3d at 346-47 (it is often quite possible to resolve a public official's claim of qualified immunity as a matter of law because a *Rule 12(b)(6)* motion requires the court to accept as true all well-pleaded facts in the complaint).  *Levenstein* also stands for the proposition, recognized by this Court (*see* First Opinion, at 15;

---

[5] As argued *supra.*, at 5-6, and *infra.*, at 8, probable cause defeats all of Plaintiff's causes of action for any civil rights violation.  *See* First Opinion, at 5-11, 16-17; Second Opinion, at 4-8.

Second Opinion, at 7-8), that Plaintiff bears the burden of showing: 1) whether she has asserted a violation of a constitutional right; and 2) whether the applicable constitutional standards were clearly established at the time in question. *Id.*, 164 F. 3d at 351. Plaintiff fails both requirements.

First, Plaintiff has not asserted a violation of a constitutional right because probable cause defeats all her claims. *See* First Opinion, at 5-11, 16-17; Second Opinion, at 4-8. Second, assuming Plaintiff properly alleged such a constitutional violation, she cannot meet the second requirement because a reasonable person in Officer Hildebrandt's position would not conclude that arresting Plaintiff under these facts was a violation of her constitutional rights because he could have reasonably determined that the substance of the Orders gave him probable cause to arrest her. *See* First Opinion, at 16-17. As this Court also recognized, Plaintiff previously failed to cite to a factually analogous case holding that acting pursuant to a valid state court order could still violate the constitution. *See* First Opinion, at 16; Second Opinion, at 8. Plaintiff has again failed to cite such a case and her argument fails.

### D. THE COMPLAINT DOES NOT SUFFICIENTLY ALLEGE A CAUSE OF ACTION FOR CIVIL CONSPIRACY.

Plaintiff correctly concedes that a conspiracy cannot exist solely between members of the same entity. Response, at 11. However, Plaintiff contends that the instant conspiracy was not among members of the same entity because the District's outside counsel also participated in it. *Id.* However, Plaintiff's own allegations belie this assertion as to Officer Hildebrandt. In her Complaint, Plaintiff alleged that the District police department (later identified as Officers Cooper, Hildebrandt, and Dwyer (*see* Compl. at ¶¶23, 24, 25, 26, and 29)) regularly checked in with their superiors (*see* Compl. at ¶19), and that White had given instructions to them about

8

what to do if Plaintiff arrived on the property. *See* Compl., at ¶¶21, 29. Hence, through Plaintiff's own words, a claim for civil conspiracy does not lie against Officer Hildebrandt.[6]

Plaintiff's contention that there was a civil conspiracy as a way to obtain an unfair advantage in the foreclosure lawsuit is highly implausible. *See* Response, at 10 (citing Compl. at ¶¶43, 46). First, Plaintiff had already been ordered by name to vacate the property by virtue of the October 13, 2013 Order, and Plaintiff's eviction and possession in favor of the District had already been established by virtue of the May 5, 2014 Order entered in the foreclosure case. The District and the other Defendants stood to gain no legal advantage by arresting her except to legally compel her to obey the Orders.

Second, through her Withdrawal (*see* Dkt. 78), Plaintiff concedes that she received notice on August 12, 2014 that she was not to be on the property. The facts surrounding that notice, which are already before this Court, show that what occurred was not a conspiracy at all.[7] Thus, Plaintiff did not arrive on the property on August 13, 2014 "in the same manner as she had done on many past occasions." Response, at 6. Plaintiff's allegations of a mysterious conspiracy are therefore implausible because the Defendants told her exactly what they intended to do.

---

[6] It should be noted that there is no allegation that the District's outside counsel communicated with Officer Hildebrandt or that he is or was his attorney.

[7] Defendant Carmichael informed Plaintiff through her instant counsel that the District intended to enforce the May 5, 2014 Order and that Plaintiff was no longer welcome on the property, by sending an e-mail before the occurrence stating, "Mr. and Mrs. Cannon have repeatedly entered the property stating that they are there to take care of their horses. The Cannons cannot enter the property any more, and have no reason to do so, particularly when you represented in court that the horses are not theirs. The Cannons were evicted from the property by two different court orders. Continued trespassing will be addressed by the police." *See* Dkt. 19, at Exhibit 1, Exhibit L thereto, at par. 16. Plaintiff concedes that she was aware of that e-mail, for that led to her Withdrawal. This state court document refutes the allegations in the Complaint that Plaintiff had permission to be on the property or that any of the Defendants had somehow acquiesced in her presence there. *See* Compl. at ¶¶18, 19, 22.

Finally, there is no wrongful conduct, one of the two required elements for a civil conspiracy claim, because probable cause exists. This Court has already held that a civil conspiracy claim cannot be sustained on that basis. *See* Second Opinion, at 7.

## III.    CONCLUSION.

Officer Hildebrandt has set forth multiple reasons why the allegations in the Complaint do not support viable causes of actions against him. Probable cause bars all four counts in the Complaint. Office Hildebrandt has absolute and qualified immunity that bar the claims. Civil conspiracy cannot lie against Officer Hildebrandt because he cannot legally conspire with his superiors and colleagues and because there was no wrongful act. Plaintiff has not proffered any case law or compelling arguments that refute his reasons. For the foregoing reasons, the Complaint against Officer Hildebrandt should be dismissed with prejudice.

RESPECTFULLY SUBMITTED,

ANITA ALVAREZ
State's Attorney of Cook County, Illinois

By: */s/ Jayman A. Avery III*
Jayman A. Avery III (6192261)
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-7780